Filed: 7/24/2014 10:12:45 AM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Robin Whitehead Deputy
Envelope ID: 1929398

CAUSE NO. 401-02713-2014

| | | |
|---|---|---|
| **JOHN JOSEPH QUESENBERRY** *Plaintiff,* | § § § | **IN THE DISTRICT COURT OF** |
| V. | § § | **COLLIN COUNTY, TEXAS** |
| **OMEGA FLEX, INC.** *Defendant.* | § § | **_____JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff JOHN JOSEPH QUESENBERRY (hereinafter referred to as "Plaintiff") and for his cause of action against OMEGA FLEX, INC. would respectfully show unto the court as follows:

### I.
### DISCOVERY

1. Discovery in this cause is requested to be conducted under Level III, pursuant to Texas Rule of Civil Procedure 190.4.

### II.
### THE PARTIES

2. Plaintiff is John Joseph Quesenberry, an individual citizen of the Collin County, Texas and all times relevant herein the homeowner of the real property located at 2531 Royal Troon Drive, Plano, Collin County, Texas 75025 ("the Quesenberry Residence)

3. Plaintiff's insurer, United Services Automobile Association ("USAA"), is a reciprocal inter-insurance exchange that, at all times relevant hereto, insured the real and personal property located at 2531 Royal Troon Drive, Plano, Collin County, Texas 75025.

4. Defendant Omega Flex, Inc. ("OMEGA FLEX") is a foreign corporation organized and existing under the laws of the State of Pennsylvania, whose principal place of business is 451 Creamery Way, Exton, Pennsylvania. Omega Flex engages in business in Texas

but has not designated nor maintains a resident agent for service of process in Texas. Therefore, pursuant to TEX. CIV. PRAC. & REM. CODE §17.044 and 17.045, Defendant Omega Flex may be served by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 who may serve a copy of this Petition and Citation on Defendant as follows:

> Kevin Hoben, President
> Omega Flex, Inc.
> by and through its Registered Agent
> Corporation Service Company
> 2595 Interstate Drive, Suite 103
> Harrisburg, PA 17110
> 800-622-2300

## III.
## JURISDICTION AND VENUE

8. The Court has jurisdiction over Defendant, a non-resident, because Omega Flex has purposefully availed itself of the privileges and benefits of conducting business in Texas by repeatedly shipping its products to Texas. *See Spa Giacomini v. Lamping*, 42 S.W.3d 265, 273 (Tex. App. – Corpus Christi 2001, no pet.).

9. Venue is proper in Collin County, Texas under the general venue rule because all or a substantial part of the acts or omissions occurred in Collin County, Texas, and because the property damaged is located in Collin County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(j).

10. Plaintiff would show that it has incurred damages in excess of the minimum jurisdictional limits of this Court. The damages suffered include, but are not limited to, damages to real and personal property in the amount of $130,298.46 as a result of the fire.

## IV.
## FACTS

11. At all times material hereto, Plaintiff owned the real and person property located at 2513 Royal Troon Drive, Plano, Texas 75025, ("Quesenberry Residence".)

12. At all times material hereto, Defendant Omega Flex was engaged in the business of designing, manufacturing, distributing and selling the Omega Flex Corrugated Stainless Steel Tubing ("CSST") used for the distribution of natural gas in natural gas systems serving residential properties.

13. The CSST installed in the Quesenberry Residence was designed, manufactured, marketed, sold and distributed by Defendant Omega Flex.

14. On or about August 17, 2012, the Quesenberry Residence was severely damaged by fire when lightning induced energy on the metallic components of the Quesenberry Residence including, but not limited to, the gas distribution system ("the fire"). Specifically, the lightning-induced energy created a hole in the CSST which allowed gas to escape and ignite.

15. Defendant Omega Flex's improper design, manufacture, and marketing of the CSST used in the construction of the Quesenberry Residence was the sole proximate cause or a contributing cause of the August 17, 2012 fire at the Quesenberry Residence.

16. Defendant owed a duty of care, in accordance with common law, statutory law, contractual and implied obligations and breached those duties.

17. As a result of the fire, Plaintiff suffered damages to the real and personal property in the amount of $130,298.46 as a result of the fire.

# V.
## CAUSES OF ACTION AGAINST DEFENDANT OMEGA FLEX

**A.  First Cause of Action – Strict Products Liability**

18. Plaintiff pleads, restates, and realleges the previous paragraphs as if set forth fully herein and would further show the court as follows:

19. Defendant, Omega Flex, sold, designed, manufactured, assembled, distributed and marketed and/or otherwise placed into the stream of commerce the CSST gas piping made the basis of this lawsuit in a defective condition and failed to warn of said defects, which defects and "failure to warn" rendered the CSST gas piping unreasonably dangerous.

20. The CSST gas piping is defective because it is susceptible to failure when exposed to known and foreseeable conditions in a residential property and, in particular, to voltages and currents induced by lightning strikes.

21. The CSST gas piping is defectively marketed to lightning-prone regions where the danger, and high probability of failure when induced with lightning current, greatly exceeds any possible utility.

22. The CSST gas piping is defective due to inadequate wall thickness and the lack of protective insulating covers that would prevent damage to the CSST gas piping that can occur with lightning strikes and electrical arcing.

23. The CSST gas piping is defective due to inadequate warnings and instructions in that, when the CSST gas piping left the hands of Defendant Omega Flex, Defendant Omega Flex knew or should have known of the risks involved with the use of said product. Nevertheless, Defendant Omega Flex failed to provide adequate warnings and instructions to users, installers, or purchasers of the CSST gas piping of those risks and failed to provide a means to avoid those risks.

24. The CSST gas piping was defective in design in that, when the gas piping left the hands of Defendant Omega Flex, the dangers presented by the CSST gas piping far exceeded the benefit and utility associated with its design, and alternative designs were know and available to Defendant Omega Flex.

25. The CSST gas piping is defective in its design in that, it is in a condition not reasonably contemplated by consumers and is unreasonably dangerous when used in the manner for which it was intended in the Quesenberry Residence.

26. The CSST gas piping was unreasonably dangerous and unsafe for its intended use by reason of defects that existed when Defendant Omega Flex placed the CSST into the stream of commerce and prior to the time the defects caused damage to the Quesenberry Residence, as alleged herein.

27. As a direct and proximate result of the dangers of this defective product engineered, designed, marketed, distributed, manufactured, supplied and/or sold by Defendant Omega Flex, a fire occurred which resulted in substantial damage to the real and personal property of the Plaintiff.

28. Defendant Omega Flex is liable for the above damages pursuant to Chapter 82 of the Texas Civil Practice and Remedies Code.

**B. Second Cause of Action – Negligence**

29. Plaintiff pleads, restates and realleges the previous paragraphs as if set forth fully herein and would further show the court as follows:

30. Defendant Omega Flex manufactured the CSST at issue in this case.

31. As the manufacturer and seller of the CSST, Defendant Omega Flex had a duty to use reasonable care in the design, development, production, and marketing of the subject product.

32. Defendant Omega Flex's duty extends to all reasonably foreseeable users and consumers of the subject product, including the Plaintiff.

33. In addition, Defendant Omega Flex had a duty, after the sale of the subject product, to warn owners or users of the product of hazards of which it later became aware.

34. Defendant Omega Flex breached its duties to the Plaintiff:

   a. failing to adequately develop a CSST product with a strong enough exterior skin and coating so that it would be able to tolerate normal and expected conditions in the field where it was placed;

   b. failing to properly inspect and test the design and construction of its product before distributing the product en masse to the public, which includes the failure to perform any or all of the flowing tests:

      i. simulations of the conditions involved in a lightning strike that would show if separation distance is needed between the CSST conduit and other metallic conduits (such as a chimney flue or HVAC duct or cable);

      ii. simulations of the conditions involved in a lightning strike that would show if bonding conductors located at the entrance are sufficient depending on the length of the conductors;

      iii. simulations of the conditions involved in a lightning strike that would show if multiple bonding along the conductor would reduce the chances of failure;

      iv. tests that would check the ability of CSST to withstand a small fault current for a long time, as well as higher fault current for a shorter time;

      v. tests that would identify the impedance (mainly inductance) of CSST per unit measure;

      vi. impedance testing to determine the maximum bending radius of the CSST; and

      vii. tests with 8/20 impulses (representing induced surges) to see if this can damage CSST if multiple bonding is not provided.

   c. failing to warn consumers and end users of the CSST product of its susceptibility to damage in the event of a lightning storm;

   d. carelessly and negligently advertising that black iron pipe, which was the most commonly used piping for gas distribution systems prior to the introduction of the CSST product, is similarly susceptible to damage in the event of a reasonably foreseeable lightning storm and that CSST is a suitable replacement for black

pipe, when in fact CSST is more susceptible to damage in the event of a reasonably foreseeable lightning storm;

e. failing to conduct research on the potential hazards associated with CSST;

f. disregarding the available research regarding the potential hazards associated with the use of CSST in areas where lightning storms are foreseeable;

g. failing to take appropriate measures to ensure that the consumers and/or installers of the CSST product received adequate and proper instruction on how to properly ground and bond the above-ground portions of the gas piping system;

h. failing to warn the users of its product of the importance of a lightning protection system to the structure given CSST's susceptibility to damage and failure in the event of a direct lightning strike to the exterior of the structure;

i. failing to warn consumers and installers of CSST of the substantial risk of fire or similar peril presented by the improper installation of the CSST product;

j. failing to provide consumers, distributors, and installers of CSST with a product that was capable of withstanding damage to its integrity resulting from expected and typical electrical storms and lightning common to the area;

k. failing to provide adequate communication and training to foreseeable installers and users of CSST about the importance of bonding the CSST to the HVAC system and electrical system and assuring that these systems are properly grounded;

l. failed to provide adequate communication and training to foreseeable installers and users of CSST about the advantages of equipotential bonding (including bonding of metal systems not normally bonded to the electrical system, such as chimney flues);

m. failing to provide adequate communication and training to foreseeable installers and users of CSST about the advantages of a lightning protection system to protect the CSST in particular;

n. failing and/or omitting to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the CSST;

o. failing to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

p. otherwise failing to use due care under the circumstances.

35. The CSST product was defective and unreasonably dangerous in that it was:

a. manufactured so that is unable to withstand damage to its integrity resulting from electrical storms and lightning;

    b. manufactured so that it is not able to be properly grounded so that the aboveground portions of the gas piping system are not electrically continuous and bonded to any ground electrode, so that it did not comply with manufacturing instructions and other applicable codes;

    c. supplied without adequate instructions for safe use, not only to the users/consumers of the CSST in this case, but to any entities or individuals who would be involved in the installation of the CSST;

    d. supplied without adequate warnings of the potential for catastrophic failure in the event of a lightning strike at or near the residence or structure;

    e. supplied without adequate warnings of the latent and unreasonably dangerous characteristics of the CSST;

    f. supplied without adequate warnings as to the dangers inherent in the improper use and installation of the CSST, not only to the users/consumers of the CSST in this case, but to any entities or individuals who would be involved in the selection, purchase or installation of the CSST ; and

    g. defectively designed because it does not employ safety devices that could have prevented the Fire.

36. The CSST product was in the defective condition at the time that it left Defendant Omega Flex's possession, custody and control.

37. As a direct and proximate result of Defendant Omega Flex's negligence, carelessness and reckless acts and omissions, Plaintiff sustained real and personal property damage, for which Defendant Omega Flex is legally liable.

**C. Third Cause of Action – Breach of Implied Warranty of Merchantability & Fitness**

38. Plaintiff pleads, restates and realleges the previous paragraphs as if set forth fully herein and would further show the Court as follows:

39. Defendant Omega Flex manufactured and/or sold the subject product.

40. Defendant Omega Flex placed the subject product into the stream of commerce.

41. This product is the type of product that Defendant Omega Flex is in the business of manufacturing, marketing, selling, and distributing.

42. Defendant Omega Flex expected that the subject product would reach the user or consumer without substantial change in the condition in which it was sold.

43. The subject product reached the user or consumer without substantial change in the condition in which it was sold.

44. Plaintiff is a user and/or consumer of the subject product.

45. Defendant Omega Flex impliedly warranted that the CSST was merchantable for its ordinary purpose, fit for its intended purpose and safe for normal use.

46. Defendant Omega Flex breached its implied warranty of merchantability by selling a product which was not merchantable for its ordinary purpose, fit for its intended purpose, or safe for normal use.

47. The subject CSST product was defective in that it was:

   a. manufactured so that is was unable to withstand damage to its integrity resulting from reasonably foreseeable electrical storms and lightning;

   b. manufactured in such a way that it was unable to be properly grounded so that the aboveground portions of the gas piping system were not electrically continuous and bonded to any ground electrode, so that it did not comply with manufacturing instructions and other applicable codes;

   c. supplied without adequate instructions for safe use, not only to the consumers of the product in this case, but to any entities or individuals who would be involved in the installation of the subject CSST product;

   d. supplied without adequate warnings of the potential failure of the subject CSST product in the event of a lightning strike on or near a residential home;

   e. supplied without adequate warnings of the latent dangerous characteristics of its CSST product;

   f. supplied without adequate warnings as to the dangers inherent with the improper use and installation of the subject CSST product, not only to the consumers of the product in this case, but to any entities or individuals who would be involved in the installation of the CSST product; and

   g. defectively designed so that it did not employ safety devices that could have prevented the Fire.

48. The subject CSST product was in the defective condition at the time that it left Defendant Omega Flex's possession or control.

49. The subject CSST product was expected to and did reach Plaintiff without substantial change in its condition.

50. The subject CSST product was used for its intended purpose and/or for a purpose that was reasonably foreseeable by Defendant Omega Flex.

51. Plaintiff did not use the subject CSST product for anything other than its intended purpose.

52. The subject CSST product could have been sold with an alternative design without substantially impairing the usefulness, practicality, or desirability of the product, in that the product could have been one that was subjected to and/or could have included one or more of the following protective measures:

   a. manufactured with thicker walls so that it was able to withstand damage to its integrity resulting from electrical storms and lightning;

   b. manufactured so that it was able to be properly grounded;

   c. supplied with adequate instructions for safe use, not only to the users/consumers in this case, but to any entities or individuals who would be involved in the installation of the CSST;

   d. supplied with adequate warnings of the potential failure of the CSST in the event of a lightning strike on or near a residential home;

   e. supplied with adequate warnings of the latent dangerous characteristics of its product;

   f. supplied with adequate warnings as to the dangers inherent in the improper use and installation of the CSST, not only to the users/consumers in this case, but to any entities or individuals who would be involved in the installation of the CSST;

   g. designed so that it employed safety devices that could have prevented the Fire;

   h. other potential safety features that might be revealed in the course of discovery.

53. As a direct and proximate result of the defective condition as set forth in the foregoing paragraphs, the product in question ignited a fire, causing extensive damage to the real and personal property, including the Quesenberry Residence.

54. Defendant Omega Flex knew Plaintiff and other similarly situated homeowners relied on Omega Flex's skill and judgment to select and furnish goods that were appropriate for use in a residential property.

55. The Plaintiff relied on Defendant Omega Flex's skill and judgment to furnish goods that were appropriate for use in a residential property.

56. As a direct and proximate result of Defendant Omega Flex's breach of implied warranties described above, Plaintiff suffered damages.

## VI.
## JURY DEMAND

57. Plaintiffs demand that this court impanel a lawful jury to hear this case and tenders its jury fee with this Petition.

## VII.
## RESERVATION OF RIGHTS

58. Plaintiff specifically reserves the right to bring additional causes of action against Defendant, to seek additional damages from Defendant, and to amend this Petition as necessary.

## VIII.
## FOR THE COURT'S EYES ONLY, NOT TO BE READ TO THE JURY

59. Plaintiff hereby gives notice to the court and all parties concerned that this lawsuit is being brought and prosecuted jointly by Quesenberry and USAA, a real party in interest, pursuant to its legal and equitable subrogation rights and its insurance contract with Quesenberry.

60. USAA insured, among other things, the property and contents under Plaintiff's homeowner's insurance policy.

61. After the fire, Mr. Quesenberry submitted a first-party claim to USAA. The claim has been fully adjusted and USAA has paid an amount in excess of the Court's minimum jurisdictional limits to settle the first-party claim. By virtue of the terms of its policy, USAA is contractually subrogated to the rights of its insured. Moreover, USAA is equitably subrogated to the rights of its insured by operation of payments that it made under its contract.

## IX.
## RULE 194 REQUESTS FOR DISCLOSURE

62. Defendant is requested, within fifty (50) days of service of this petition, to provide the information or materials listed in Rule 194.2 of the Texas Rules of Civil Procedure.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff John Joseph Quesenberry prays that Defendant Omega Flex, Inc. be cited to appear and answer herein, and that upon a final hearing, the court enter a judgment against Defendant in favor of Plaintiff for all relief requested, with prejudgment interest thereon at the legal rate, post judgment interest at the legal rate, court costs, attorney's fees, and for such other and further relief, both at law and in equity, to which Plaintiffs may show himself to be justly entitled.

Respectfully submitted,

**COZEN O'CONNOR**

BY: **MARCOS HAZAN-COHEN**
State Bar No. 24012807
1717 Main Street, Suite 3400
Dallas TX 75201
(214) 462-3000 (Telephone)
(214) 462-3299 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**